UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAWRENCE M. PLEVIN

        Plaintiffs

v.

US BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR FLORIDA MORTGAGE
RESOLUTION TRUST, SERIES 2014-4;
CITIMORTGAGE

        Defendants.

_____/

Case No.: 6:15-cv-412-ORL-41-KRS

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW, Plaintiff, LAWRENE M. PLEVIN (herein "Plaintiff"), Pro se, hereby

sues the Defendants named in the above-styled cause, (hereinafter referred to collectively as

Defendants). In support of thereof states:

### THE PARTIES

1. Plaintiff, LAWRENCE M. PLEVIN, is basing this Complaint on the misconduct of

the Defendants during the Mortgage and subsequent foreclosure of a resident of

Orange County, Florida. Plaintiff was past owner of the property located at 728 Oak

Leaf Court, Apopka, Florida. 32712, legally known as: "LOT 171, WEKIWA GLEN

REPLAT, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT

BOOK 10, PAGES 85-88 OF THE PUBLIC RECORDS OF ORANGE COUNTY,

FLORIDA.

2. Defendant US BANK NATIONAL ASSOCIATION, is a banking subsidiary of U.S. Bancorp and maintains its principle place of business at 425 Walnut Street, Cincinnati, OH 45202, its Registered Agent is located at: U.S. Bank, N.A. C/O Registered Agent CT Corporation System 1201 Hays Street, Tallahassee, Fl. 32301.

3. FLORIDA MORTGAGE RESOLUTION TRUST SERIES 2014-14 is the trust where the note subject to this lawsuit was securitized.

4. CITIMORTGAGE INC. (CITIMORTGAGE) is a foreign corporation doing business in the State of Florida, during the relevant period for the allegations within this Complaint. CITIMORTGAGE's principle place of business is located at: 1000 Technology Drive, O'Fallon, MO 63368; its registered agent is: C T Corporation System 1200 South Pine Island Road, Plantation, Fl. 333324.

JURISDICTION AND VENUE

5. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332, because the Plaintiff is a resident of the State of Florida, and the Defendants are foreign corporations doing Business in the State of Florida. During all times relevant to the events at issue in this Complaint, U.S. BANK NATIONAL ASSOCIATION and CITIMORGAGE INC. transact business in the State of Florida, including originating loans and transferring loans to investors.   The amount in controversy, without interest, costs or attorneys' fees, exceeds the amount specified by 28 U.S.C. § 1332. Venue is proper in this jurisdiction because a substantial part of the events or omissions giving rise to this claim occurred in this district.

2

## STATEMENT OF FACTS

6. This is a fraud action by Plaintiff against Defendants US BANK NATIONAL ASSOCIATION as Trustee for FLORIDA MORTGAGE RESOLUTION TRUST SERIES 2014-14; and CITIMORTGAGE INC., to recover damages and penalties arising from a scheme to knowingly make, use, or cause to be made or used, a false record in connection to a mortgage loan and foreclosure action.

7. On May 8, 2003, the original lender CIMARRON MORTGAGE COMPANY D/B/A THE MORTGAGE WAREHOUSE, A Corporation, issued Plaintiff a loan for $188,335.92 secured by a Note and Mortgage on his property.

8. On December 8, 2003, CIMARRON MORTGAGE COMPANY D/B/A THE MORTGAGE WAREHOUSE allegedly transferred its Note and the beneficial interest attached to CITIFINANCIAL MORTGAGE COMPANY INC.

9. The note reflects an undated special endorsement without recourse to CITIMORTGAGE INC. However, the mortgage was assigned to CITIFINANCIAL MORTGAGE COMPANY years prior to Defendant CITIMORTGAGE INC.'s alleged merger with CITIFINANCIAL. The alleged endorsement directly conflicts with the chain of title in Public Record. **(Note attached hereto as Exhibit A)**

10. Moreover, the endorsement would have had to reflect an endorsement from CIMARRON MORTGAGE COMPANY D/B/A THE MORTGAGE WAREHOUSE to CITI FINANCIAL MORTGAGE COMPANY, or an endorsement in blank, to show a proper chain of title and to have any consistency with Public Record, which reflects an Assignment of Mortgage from CIMARRON MORTGAGE COMPANY D/B/A THE MORTGAGE WAREHOUSE to CITIFINANCIAL MORTGAGE COMPANY on December 8, 2003. **(Assignment attached hereto as Exhibit B)**

3

11. CITI FINANCIAL MORTGAGE COMPANY merged with CITIMORTGAGE, INC. effective on July 01, 2006, some three (3) years after the aforementioned Assignment. Despite this fact CITIMORTGAGE INC. filed a purported Note that reflected a special endorsement from the original Lender to CITIMORTGAGE INC.

12. To negotiate the subject Note by law the Note had to be delivered to CITIFINANCIAL MORTGAGE COMPANY. To afford CITIFINANCIAL MORTGAGE COMPANY any beneficial interest of the Note it had to be endorsed to them or endorsed in blank. The Note reflects only a single special endorsement naming CITIMORTGAGE INC. as the benefactor. The misrepresentation on the Note speaks for itself.

13. Defendants filed a foreclosure action against Plaintiff on February 12, 2012, in the name of CITIMORTGAGE INC. as the original plaintiff. This filing was knowingly fraudulent as shall be fully set forth below.

14. On June 22, 2012, the Note and Mortgage were purportedly assigned to Defendant U.S BANK, N.A. and recorded on June 22, 2012, in Official Records Book 10397, Page 3211, in the Public Record of Orange County, Florida. This was a fraudulent transfer as shall fully be set forth below. **(Assignment attached hereto as Exhibit C)**

15. On July 13, 2012, CITIMORTGAGE, INC. filed a Motion to Substitute Party Plaintiff naming Defendant U.S BANK, N.A., as the Substitute Party Plaintiff in the foreclosure action.

16. On July 27, 2012 Defendant U.S BANK N.A. submitted a Notice of Filing Original Note and Mortgage. **(Notice attached hereto as Exhibit D).** As reflected in this filing, the subject Note does not contain an endorsement to Defendant U.S. BANK

4

N.A.; or a blank endorsement to allow US BANK N.A. to negotiate the alleged original Note or to claim the necessary beneficial interest of the Note to sustain the law suit.

17. Defendants failed to provide the Court with legally sufficient proof that either Defendant is legally authorized to enforce the Note. Rather, Defendant CITIMORTGAGE, INC. filed fraudulent documents to achieve authorization when legally it had none.

18. As shall fully be set forth below, Defendants knowingly and fraudulently presented false information in support of its foreclosure claim. Filed these documents into Court record and Public Record knowing them to be fraudulent and intended to directly harm the Plaintiff by obtaining the foreclosure on Plaintiff's Property and the sale of said Property with no legal authority to do so.

19. As a result of this intentional fraud a justiciable issue now exists between Defendants and Plaintiff concerning the validity of the note and any legal transfer thereof and the unlawful sale of Plaintiff's Property through the named Defendants reliance on fraudulent documents to obtain the unlawful sale of Plaintiff's Property.

20. In response thereto Plaintiff now files this action for damages based on the misconduct of all named Defendants.

### COUNT ONE

### FRAUD
### &
### CONSTRUCTIVE FRAUD

21. Plaintiff re-alleges paragraph 1-19 as fully set forth herein.

22. A pleading that contains allegations of **fraud** in Federal Court is subject to a heightened pleading. *See* Fed.R.Civ.P. 9(b). Rule 9(b) provides:

5

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

23. Fed.R.Civ.P. 9(b). Rule 9(b) applies to claims for negligent misrepresentation under Florida law because negligent misrepresentation "sounds in fraud." *Johnson v. Amerus Life Ins. Co.,* No. 05–61363, 2006 WL 3826774, at *4 (S.D.Fla. Dec. 27, 2006). Rule 9(b) may be satisfied if the complaint sets forth:

> (1) [P]recisely what statements were made in what documents or oral representations or what omissions were made, and
> (2) [T]he time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, and
> (3) [T]he content of such statements and the manner in which they misled the plaintiff, and
> (4) [W]hat the defendants obtained as a consequence of the fraud.
> *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1371 (11th Cir.1997).

24. Defendant CITIMORTGAGE, INC. alleged in paragraph 5 of the Complaint to foreclose mortgage it filed against Plaintiff in the instant case, that "Plaintiff is holder of all real and beneficial interest in the subject Promissory Note and Mortgage including and not limited to the right to maintain this foreclosure action." In an attempt to support these allegations Defendant CITIMORTGAGE, INC. included a fraudulent document it purported was a copy of the original Note. **(Complaint attached hereto as Exhibit C) (Note attached hereto as Exhibit A)**

25. A cursory examination of the subject Note reflects the misrepresentation made on the document intended to commit fraud on the Plaintiff, the Court, and eventually Public Record. The subject Note contains a purported "special endorsement" allegedly from the original Lender to Defendant CITIMORTGAGE, INC. However, this purported

endorsement is cancelled out by the alleged Assignment of Mortgage dated December

08, 2003, which clearly reflects CITIFINANCIAL MORTGAGE COMPANY as the

Assignee and the original Lender as the Assignor. This memorialized the original

Lenders sale and transfer of all beneficial rights thereafter. The documents show that

the original Lender could not have vested any interest in the subject Mortgage to

CITIMORTGAGE INC. as it had none to transfer.

26. In accordance with Article 3 of the Uniform Commercial Code, Section 3-201

[Negotiable Instruments]:

> (a) "Negotiation" means a transfer of possession, whether voluntary
> or involuntary, of an instrument by a person other than the issuer to a
> person who thereby becomes its holder.
> (b) Except for negotiation by a remitter, if an instrument is payable to
> an identified person, negotiation requires transfer of possession of the
> instrument and its indorsement by the holder. If an instrument is
> payable to bearer, it may be negotiated by transfer of possession
> alone.

27. As is obvious by the subject Note the single "endorsement" to CITIMORTGAGE,

INC. is problematic to the Defendant's explanation in defending against Plaintiff's

allegations of fraud. By law the subject Note required either a blank endorsement

from the original Lender or a special endorsement to CITI FINANCIAL

MORTGAGE COMPANY, in order to complete the negotiation of the subject Note.

This never occurred. Rather, nine (9) years after the alleged negotiation of the subject

Note as indicated by the Assignment of Mortgage dated December 08, 2003, attached

hereto as Exhibit B, to CITI FINANCIAL MORTGAGE COMPANY,

CITIMORTGAGE, INC., appears with a purported note with a single endorsement

from the original Lender to itself for the purpose of showing standing to foreclose on

the Plaintiff's Property.

28. In accordance with the Uniform Commercial Code, **Article 3, Section 3-204**

[Indorsement]

> (a) "Indorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument, (ii) restricting payment of the instrument, or (iii) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.
> (b) "Indorser" means a person who makes an indorsement.
> (c) For the purpose of determining whether the transferee of an instrument is a holder, an indorsement that transfers a security interest in the instrument is effective as an unqualified indorsement of the instrument.
> (d) If an instrument is payable to a holder under a name that is not the name of the holder, indorsement may be made by the holder in the name stated in the instrument or in the holder's name or both, but signature in both names may be required by a person paying or taking the instrument for value or collection.

29. Hence, the need of an endorsement on the Note either in blank or special endorsement

naming CITI FINANCIAL MORTGAGE COMPANY. There simply is no means by

which the original Lender could have specially endorsed the subject Note to

Defendant CITIMORTGAGE, INC., as that Defendant alleged in its 2012 filing of

the subject Note as an attachment to its Complaint for Foreclosure.

30. In accordance with the Uniform Commercial Code, Article 3, Section 3-205, [Special

Indorsement; Blank Indorsement; Anomalous Indorsement.]:

(a) If an indorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the indorsement identifies a person to whom it makes the instrument payable, it is a "special indorsement." When specially indorsed, an instrument becomes payable to the identified person and may be negotiated only by the indorsement of that person. The principles stated in Section 3-110 apply to special indorsements.

(b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

(c) The holder may convert a blank indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable.

(d) "Anomalous indorsement" means an indorsement made by a person who is not the holder of the instrument. An anomalous indorsement does not affect the manner in which the instrument may be negotiated.

31. There is no legal means by which the subject Note could have been negotiated to three (3) different entities without more than one (1) special endorsement from the original Lender to Defendant CITIMORTGAGE, INC. To accomplish this the subject Note at the very least would need a blank endorsement that rendered it payable to the bearer. However, here as illustrated there is no such endorsement. Therefore, the Defendants did knowingly fraudulently present themselves as being duly authorized to foreclose on the Plaintiff and subsequently seize and sell his Property without ever having the lawful right to do so.

32. Defendant US BANK N.A. substituted itself as Party Plaintiff in the state action as trustee of Florida Mortgage Resolution Trust 2012-4.

33. The alleged transfer from CITIMORTGAGE, INC. dated June 22, 2012, to U.S BANK, N.A, after the filing of the foreclosure action was fraudulent. Defendant U.S BANK, N.A. knew that CITIMORTGAGE, INC. lacked standing or capacity to bring the Foreclosure action but nevertheless continued to foreclose on the Plaintiff.

34. The purported Assignment of Mortgage relied on by the Defendants to substitute Party Plaintiff during the foreclosure action only transferred the Mortgage not the Note, which is logical because CITIMORTGAGE, INC. did not have any beneficial interest of the loan to transfer to U.S. BANK N.A.; however transferring only the Mortgage not the Note to U.S. BANK N.A. clearly did not vest U.S. BANK N.A. with the necessary beneficial interest to establish its standing to sustain the law suit. Another element that invalidates the June 22, 2012 Assignment and the December 8, 2003 is the fact that a known robo-signer executed both Assignments despite the fact they were generated nearly nine (9) years apart. M.E. Wileman is widely known to be a high ranking officer for Orion Financial Group, Inc. as well as being a robo-signer. **(Information attached hereto as Exhibit E)**. These facts are important to the present Complaint as it adds credence to the fact that this entire loan and subsequent foreclosure action is based wholly on fraud. There is not a document connected to this case that does not contain misrepresentations.

35. The transfer from CIMMARRON MORTGAGE COMPANY D/B/A THE MORTGAGE WAREHOUSE on December 08, 2003, to CITI FINANCIAL MORTGAGE COMPANY was a legally insufficient transfer as the subject Note did not reflect an endorsement either in blank or specifically naming CITI FINANCIAL MORTGAGE COMPANY. Therefore, the chain of title was irreparably broken on or about December 08, 2003.

36. Thereafter the named Defendants embarked on a scheme to intentionally and knowingly commit fraud upon the Plaintiff. The aforementioned facts and law state a sufficient cause of action.

## COUNT TWO

## NEGLIGENT MISREPRESENTATION

37. Plaintiff re-allege and incorporate by reference each of the preceding paragraphs as if fully set forth in this paragraph

38. Notwithstanding the foregoing Defendants maintains it is the holder of the note.

39. Florida law requires an allegation that the mortgagee, plaintiff in a foreclosure action, is the present owner or holder of the mortgage and note. If the plaintiff is an assignee of the mortgage an allegation to that effect should be made. Person seeking enforcement of an instrument under subsection (1) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, s. 673.3081 applies to the case as if the person seeking enforcement had produced the instrument. § 673.3091, Fla. Stat. Ann.

40. Defendants failed to show proof that it is the owner or the holder of the note in their complaint or any filing with the trial court as they failed to show that they are the party in *physical possession* of the note, and therefore failed to establish a prima facie case for foreclosure as they are not legally the "holder of the note"

41. A "holder" is defined as the person in possession if the instrument.

42. Defendants' assignment purported to assign the Mortgage, and the money due and to become due thereon, with the interest. However the claim is disallowed as the Defendants failed to show *physical possession* of the Note, nor did they allege to have such possession.

43. Where, as here, the ownership of an instrument is transferred, the transferee's attainment of the status of "holder" depends on the negotiation of the instrument to

11

the transferee. [T]wo elements required for negotiation, both of which are missing here, are the transfer of possession of the instrument to the transferee, and its indorsement by the holder. *See*, In re Kemp, 440 B.R. 624, 630 (Bankr. D.N.J. 2010)

44. Defendants failed to establish, by strict proof, that either Defendant was the party in physical possession of the Mortgage and Note and therefore could not by definition be the "holder" of the note.

45. Based on this evidence the Plaintiff is entitled to relief.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered in its favor against Defendants as follows:

1. That Plaintiff be awarded civil penalties up to the maximum amount allowed by law;

2. Judgment for Plaintiff against Defendants and compensatory damages making Plaintiff whole for past and future losses, including but not limited to the loss of Property described in the Complaint, emotional, mental, and personal stress suffered by the Plaintiff;

3. Punitive damages be awarded for the maximum amount allowed by law; and

4. For an award the court thinks is just and proper.

Respectfully Submitted,

Lawrence M. Plevin, Pro se
1021 Golf Valley Drive
Apopka, FL 32172

## **VERIFICATION**

    I, Lawrence M. Plevin,  declare under penalty of perjury under the laws of the State of Florida, that we have read the foregoing Complaint and that the facts stated therein are true.

Executed at _____, Florida this _____ day of _____ 2015.

By: _____
Lawrence M. Plevin, Pro se